No. 02-118

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 301

KING RESOURCES, INC., and BERT E. ARNLUND,

Plaintiffs and Appellants,

v.

JOHN OLIVER, d/b/a GEMSTONE DEVELOPMENT GROUP,

Defendant and Respondent.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Gregory R. Todd, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Rodd A. Hamman, Calton, Hamman & Wolff, P.C., Billings, Montana

For Respondent:

John R. Christensen, Travis W. Kinzler, Brown Law Firm, P.C., Billings,
Montana

Submitted on Briefs:  June 20, 2002

Decided:  December 12, 2002

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1    The Plaintiffs, King Resources, Inc., and Bert E. Arnlund, filed a complaint in the District Court for the Thirteenth Judicial District in Yellowstone County in which they  alleged that the Defendant, John Oliver, breached the terms of a real estate Buy/Sell Agreement and requested that the District Court award damages.  Oliver counterclaimed that Arnlund and King Resources breached the Buy/Sell Agreement and committed bad faith and fraud. Arnlund and King Resources filed a motion for partial summary judgment.  The District Court granted the motion in part and dismissed Oliver's counterclaim, and denied the motion in part and dismissed Appellants' complaint.  King Resources and Arnlund appeal the decision of the District Court.  We reverse the order of the District Court.

¶2    We address the following issues on appeal:

¶3    Did the District Court err when it struck paragraphs 4 and 5 from the Buy/Sell Agreement?

¶4    Did the District Court err when it concluded that paragraphs 4 and 5 were conditions concurrent that were mutually breached by the parties and dismissed Arnlund's complaint?

FACTUAL AND PROCEDURAL BACKGROUND

¶5    Oliver approached Arnlund, the president of King Resources, Inc., in the spring of 2000 with a proposal that Arnlund purchase Lot 2, Block 1 of the Sharptail Subdivision in Yellowstone County. The property consisted of seventy-two acres of undeveloped land outside of Billings, Montana, which Oliver intended to develop as

2

an industrial park and call the Sapphire Business Subdivision. Oliver's option to purchase the land was about to expire and he proposed that appellants pay $2,500,000 cash and transfer a $500,000 apartment building to Oliver so he could purchase the property. Oliver proposed to immediately repurchase the central twenty-two acres for $2.1 million by contract for deed. Oliver also agreed to develop the property and advance the first $60,000 of development costs. A Buy/Sell Agreement was executed on May 18, 2000, followed by an addendum on June 21, 2000, which was superceded by another addendum on July 17, 2000 (Second Addendum).

¶6    The terms of the Second Addendum, which are central to this controversy, provide for a contract for deed in paragraph 4 and a development agreement in paragraph 5. It states in part:

4.    Seller [Oliver] and/or assigns, agrees to buy back from King Resources, Inc., and close on the center 22 +/- acres, known as lot A, of the property within 30 days of closing. . . . The purchase shall be on a contract for deed with a purchase [sic] of two million one hundred thousand dollars ($2,100,000.00) with One hundred thousand ($100,000.00) dollars down on the date of closing on this contract for deed and the balance plus interest of 1% over prime adjusted monthly amortized over 20 years, in monthly payments with the first payment being due 30 days after closing the contract . . . Closing on this contract for deed shall be done within 30 days of closing of the original purchase.

5.    Within 30 days of the closing of this sale, Buyers [Arnlund and King Resources] and Seller agree to enter into a development agreement with John Oliver to be the subdivision project administrator with authority over the day to day development and

3

marketing of the subdivision. . . . Oliver agrees to pay up to $60,000 to complete the engineering and other work to complete the approval and filing of the subdivision with those funds . . . A breach of the contract for deed as described in paragraph 4 shall also be a breach of the development agreement giving Buyers the right to terminate the development agreement. In the event the parties cannot come to terms on a development agreement within 30 days of the date of closing, this paragraph shall be null and void and the Buyers shall be entitled to make other arrangements for the property.

¶7 Arnlund tendered $2,500,000 and the apartment building to Oliver and the sale closed when the Second Addendum was completed on July 17, 2000. In the meantime, Oliver was to draft a development agreement and Arnlund was to draft the contract for deed for final execution.

¶8 A draft of the contract for deed was sent to Oliver on July 28, 2000. A first draft of the development agreement was delivered to Arnlund on August 16, 2000. At Oliver's request, changes were made to the contract for deed and a signed copy of the final contract for deed was tendered on August 31, 2000, along with a revised development contract. Arnlund was aware of the fact that Oliver had encountered difficulty securing financing for repurchase

4

and proposed Oliver sign a promissory note in place of the $100,000 down payment that was past due.

¶9  Oliver assured Arnlund he was capable of performing on the project by way of electronic facsimile on September 20, 2000, but did not include the contract for deed or development agreement. The fax attributed the delay in signing the documents to negotiations and the parties' attorneys. Oliver relayed that the project was moving forward and asked for Arnlund's continued patience.

¶10  Arnlund's September 21, 2000, letter in response clarified that he was not concerned about the delay in signing the documents, rather he was concerned with Oliver's ability to perform the contract, his failure to make the $100,000 down payment, and his ability to make the monthly payments due pursuant to the contract for deed. Another offer was made to accept a promissory note for $100,000 plus interest until Oliver could secure financing. In the letter, Arnlund requested a date by which Oliver would be able to perform his obligation and indicated that if the contract for deed was not signed and the down payment made, Arnlund would terminate the contract for deed and development agreement.

¶11  In a letter dated October 5, 2000, Oliver stated he was unable to proceed with the project because the development agreement had not been signed by Arnlund and that until the agreement was signed, Oliver could not sign or perform on the contract for deed. A copy of the development agreement was enclosed for Arnlund to sign and return to Oliver. Arnlund would not sign the agreement because

Oliver had failed to sign the contract for deed and still had not made the $100,000 down payment.

¶12 Arnlund confirmed an October 17, 2000, telephone conversation with Oliver in a letter dated October 18. According to the letter, Oliver indicated that he could not secure financing or perform the contract for deed. Arnlund confirmed that he would not sign the development agreement absent Oliver's signature on the contract for deed. He also stated that he would proceed without Oliver if necessary.

¶13 Oliver confirmed that he would not be able to perform the contract for deed on October 19, 2000, and ensured Arnlund he would facilitate a smooth transition for management of the project and sign any documents necessary to transfer management responsibilities. Oliver notified all parties involved in the project that he was being released from further responsibility and that the project had been turned over to Arnlund and King Resources. As promised, Oliver facilitated a smooth transition and turned over the necessary engineering, architectural and other intellectual property. Arnlund took the necessary steps to continue with the project from that point forward.

¶14 Arnlund and King Resources filed a complaint on November 21, 2000, and alleged that Oliver breached the terms of the real estate Buy/Sell Agreement. Oliver filed an answer and counterclaim, denying any breach and alleging breach by the Plaintiffs as well as bad faith and fraud. Arnlund and King Resources moved for partial summary judgment on August 15, 2001. They asked the court to

6

dismiss Oliver's counterclaim and determine that Oliver breached the terms of the Buy/Sell Agreement.

¶15 Following oral argument, the District Court issued its Order on November 7, 2001, and Judgment on January 14, 2002. The District Court concluded that there were no issues of material fact and that paragraphs 4 and 5 of the agreement were conditions concurrent, which were mutually breached by the parties. Consequently, both paragraphs were stricken from the agreement and all claims and counterclaims were dismissed with prejudice.

STANDARD OF REVIEW

¶16 This Court reviews an appeal of summary judgment *de novo*. *Motarie v. Mont. Joint Refuse Disposal* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. We apply the same Rule 56, M.R.Civ.P., criteria applied by the district court. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. Rule 56, M.R.Civ.P., provides that:

> the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

¶17 The party moving for summary judgment has the initial burden of establishing the absence of genuine issues of material fact. *Bruner*, 272 Mont. at 264, 900 P.2d at 903. If that burden is met, the burden shifts to the nonmoving party to raise a genuine issue of material fact by more than mere denial or speculation. *Bruner*, 272 Mont. at 264, 900 P.2d at 903. Once a court determines that no genuine factual issues exist, it must determine whether the moving

7

party is entitled to judgment as a matter of law. *Bruner*, 272 Mont. at 264, 900 P.2d at 903.

¶18 The construction and interpretation of a written agreement are questions of law. *Eschenbacher v. Anderson*, 2001 MT 206, ¶ 21, 306 Mont. 321, ¶ 21, 34 P.3d 87, ¶ 21. We review a district court's conclusions of law to determine whether the court's interpretation is correct. *Eschenbacher*, ¶ 21.

DISCUSSION

ISSUE 1

¶19 Did the District Court err when it struck paragraphs 4 and 5 from the Buy/Sell Agreement?

¶20 Arnlund and King Resources contend that the District Court erred when it struck paragraphs 4 and 5 from the Second Addendum of the Buy/Sell Agreement. They argue that the terms of the contract were not ambiguous and there was no dispute over their meaning. Therefore, the District Court was required to apply the terms of the contract to the facts and enforce the contract as written. The District Court ordered that paragraphs 4 and 5 be stricken from the Second Addendum to the Buy/Sell Agreement because of its conclusion that the parties mutually breached the agreement.

¶21 A court has no authority to insert or delete provisions of a contract where the contract's provisions are unambiguous. *Eschenbacher*, ¶ 24. An ambiguity exists when the contract taken as a whole is reasonably subject to two different interpretations. *Keeney Const. v. James Talcott Const. Co.*, 2002 MT 69, ¶ 12, 309 Mont. 226, ¶ 12, 45 P.3d 19, ¶ 12 (citation omitted). Whether a contract is ambiguous is a question of law that a court must

8

decide.  *Keeny Const.*, ¶ 12 (citation omitted).  Where the terms of a contract are clear and unambiguous the duty of the court is to apply the language as written to the facts of the case, and decide the case accordingly.  *Marco and Co., LLC v. Deaconess/Billings*, 1998 MT 26, ¶ 16, 287 Mont. 293, ¶ 16, 954 P.2d 1116, ¶ 16 (citation omitted).

¶22  Paragraph 4 provides that, within thirty days of closing, Arnlund was to prepare a contract for deed and Oliver was to repurchase the central 22+/- acres of the property pursuant to the terms of the Buy/Sell Agreement and contract for deed.  Paragraph 5 provides that Oliver was responsible for drafting a development agreement within thirty days of closing, that he would be responsible for initial development fees, that a breach of the contract for deed by Oliver gave Arnlund the right to terminate the agreement, and that if the parties could not come to terms on a development agreement within thirty days Arnlund was entitled to make other arrangements for the property.

¶23  While Oliver proposes that the paragraphs are concurrent obligations which were mutually breached, he does not argue that they were ambiguous or reasonably subject to two interpretations. Neither did the court conclude that the paragraphs were ambiguous.  We conclude that paragraphs 4 and 5 are unambiguous and that the District Court incorrectly deleted the paragraphs from the Second Addendum to the Buy/Sell Agreement.  Therefore, we apply the terms of the contract as written to the undisputed material facts.

ISSUE 2

9

¶24 Was the District Court correct when it concluded that paragraphs 4 and 5 were conditions concurrent that were mutually breached by the parties and dismissed Arnlund's complaint?

¶25 Arnlund and King Resources maintain that the District Court erred when it concluded that the parties mutually breached the Buy/Sell Agreement. They argue that they performed when $3,000,000 was paid to Oliver for the property, the contract for was deed signed and Arnlund offered to sign the development contract when Oliver was ready to make the past due down payment and sign the contract for deed. They maintain that the court erred when it concluded paragraphs 4 and 5 were conditions concurrent because the covenants are not mutually dependant. In either case, Arnlund and King Resources contend that they performed by purchasing Lot 2 and were always ready and able to perform the development contract, while Oliver was unable and unwilling to perform his obligation.

¶26 "Conditions concurrent are those conditions which are mutually dependant and are to be performed at the same time." Section 28-1-404, MCA. An agreement is mutual and dependant where performance by one party is conditioned on, and subject to, performance by the other. 17A C.J.S. *Contracts* § 361(a) (1999). Independent covenants are conditions that bind a party notwithstanding the refusal or inability of the other party to perform. 17 C.J.S *Contracts* § 361(a).

¶27 The District Court concluded that "The express language of the Buy/Sell Agreement does not make one [paragraph] more important than the other. Paragraphs 4 and 5 of the second addendum to the Buy/Sell Agreement are conditions concurrent." We note that the

10

District Court's Order and Memorandum inaccurately quote the determinative language of paragraph 5 of the Second Addendum. Paragraph 5 states in part: "A breach of the contract for deed as described in paragraph 4 shall also be a breach of the development agreement <u>giving Buyers the right to terminate the development agreement</u>. . . ." The District Court restated that language as follows: "A breach of the contract for deed as described in paragraph 4 shall also be a breach of the development agreement. . . ." It is not clear whether the omission is a typographical error, or if the court misapprehended the terms of the contract.

¶28 In either case, we conclude the development agreement was dependant upon Oliver's performance of the contract for deed and the express language of the contract indicates that the contract for deed was more important than the development contract. Furthermore, we conclude that nothing in paragraph 4 suggests that the contract for deed, or repurchase of the 22 acres by Oliver was conditioned upon the development contract. The thirty day time provision in paragraph 4 clearly protects Arnlund and establishes the time of performance for Oliver. The only condition Oliver's obligation was subject to was completing the sale, which occurred when Arnlund tendered $2,500,000 and the apartment building, and the Second Addendum was executed.

¶29 On the other hand, the development agreement was subject to two conditions. The development agreement could be terminated by Arnlund if Oliver breached the contract for deed and paragraph 5, which included the development agreement, was void if the parties could not reach an agreement within thirty days. This indicates

11

that the development agreement was not material to, or a condition to, the Buy/Sell Agreement or Oliver's obligation to execute a contract for deed and repurchase the central 22+/- acres of Lot A.

¶30 As we stated above, a court is not authorized to insert or omit terms of a contract where a contract is unambiguous. Arnlund and Oliver are both sophisticated businessmen and were both represented by counsel while negotiating the terms of the Buy/Sell Agreement and the Second Addendum. The addition of paragraph 5 to the Second Addendum indicates that the parties' negotiated their respective obligations and contemplated that Oliver would be the project manager after closing. However, nothing in paragraph 4 or 5 indicates that the addition of paragraph 5 made Oliver's obligation to sign a contract for deed and repurchase the central 22+/- acres of Lot A conditional. If the parties intended to make the performance of the contract for deed and the development agreement mutually dependant, they could have included language in the contract that permitted Oliver to terminate the contract for deed or refuse to repurchase the central 22+/- acres of Lot A if Arnlund breached the development agreement. They did not. We conclude that paragraphs 4 and 5 were not mutually dependent concurrent obligations. Therefore, even if Arnlund breached his obligation to execute the development agreement pursuant to paragraph 5, it did not excuse Oliver from performing pursuant to paragraph 4. Oliver's obligation to execute the contract for deed and repurchase the central 22+/- acres of Lot A was independent of paragraph 5.

¶31 Irrespective of whether the paragraphs 4 and 5 were mutually dependent, the facts demonstrate that Arnlund was always ready and willing to sign the development agreement. He refused to do so because Oliver would not sign the contract for deed. This is not a case of which came first, the chicken or the egg? Arnlund paid Oliver $2,500,000 and transferred an apartment building to Oliver pursuant to the Buy/Sell Agreement. Arnlund submitted the first draft of the contract for deed in late July and the final draft was prepared and signed on August 31. It is apparent that any obligation to submit the final contract for deed earlier was waived. Oliver did not tender a signed final development agreement until October 5, 2000, Oliver failed to make the $100,000 down payment, Oliver did not take advantage of Arnlund's offer to accept a promissory note for $100,000 when he could not secure financing, and Oliver failed to sign the contract for deed that was given to him on August 31, 2000. The facts indicate that Oliver breached his obligation to repurchase before Arnlund even had the opportunity to sign a final development agreement.

¶32 This Court has held that where a party to a contract materially breaches a contract, the injured party is entitled to unilaterally suspend his performance. *Liddle v. Petty* (1991), 249 Mont. 442, 446, 994 P.2d 1066, 1068. We conclude that Oliver's failure to make the $100,000 down payment as promised and failure to sign the contract for deed tendered on August 31 were material breaches of the Buy/Sell Agreement that occurred before a development agreement was even available for execution. This clearly permitted Arnlund to suspend performance of the development

13

agreement. Therefore, we hold that the District Court erred when it concluded the parties mutually breached the terms of the contract and dismissed Arnlund's complaint.

¶33 We reverse the District Court and remand this case for further proceedings to determine the damages Arnlund and King Resources incurred as the result of Oliver's breach of the Buy/Sell Agreement.

/S/ TERRY N. TRIEWEILER

We Concur:


/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM RICE