No. 04-432

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 80

TRAVIS LEE HAJENGA,

     Plaintiff and Appellant,

  v.

MICHAEL E. SCHWEIN,

     Defendant and Respondent.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 2002-662,
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          John R. Christensen, Tim Filz, Ragain, Christensen, Fulton
& Filz, P.L.L.C., Billings, Montana

     For Respondent:

          Robert J. Phillips, John F. Haffey, Phillips & Bohyer, P.C.,
Missoula, Montana

Submitted on Briefs:  March 23, 2005

Decided:  March 20, 2007

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Travis Hajenga appeals an order of the District Court for the Thirteenth Judicial District, Yellowstone County, awarding Michael Schwein summary judgment on Hajenga's suit to have an oral settlement agreement with Schwein's insurance adjuster set aside. We reverse and remand for further proceedings consistent with this Opinion.

¶2      Hajenga raises the following issue on appeal:  Did the District Court err in granting Schwein's Motion for Summary Judgment?

**Factual and Procedural Background**

¶3      On May 23, 2002, Schwein and Hajenga were involved in an automobile accident at the intersection of State Highway 416 and Jellison Road near Billings, Montana. Hajenga was 18 years old at the time and had just graduated from high school in Stanford, Montana.  He was traveling with a friend to Powell, Wyoming, to view the college campus there when the accident occurred.

¶4      According to Hajenga's affidavit filed with the District Court, Schwein drove his pickup into the path of Hajenga's vehicle causing a T-bone collision.  Both vehicles were totaled and Schwein was cited for failure to yield the right of way.  Hajenga was not cited for any traffic violations.  Both Hajenga and his passenger were wearing seatbelts and escaped serious injury.

¶5      Schwein was insured by Progressive Insurance Company (Progressive).  Shortly after the accident, Hajenga called Progressive and discussed the accident with a Progressive representative.  In that conversation, Hajenga indicated that no one was injured in the accident.  However, several days after the accident, Hajenga began

experiencing pain in his neck and lower back. Consequently, Hajenga went to the emergency room at Benefis Health Care in Great Falls, Montana, where he was given a brief physical and sent home with muscle relaxants—no x-rays were taken.

¶6 Shortly thereafter, Hajenga left for a summer job in Juneau, Alaska. On June 10, 2002, an insurance adjuster for Progressive contacted Hajenga in Juneau and offered to pay him $1,000.00 for injuries he incurred in the accident.[1] Hajenga accepted the offer and cashed the check upon receipt. The dispute in this matter centers on the parties' understanding of the oral agreement in relation to the $1,000.00 payment.

¶7 The day after his conversation with Progressive's insurance adjuster, Hajenga sought treatment from a chiropractor in Juneau and requested that the bills be forwarded to Progressive. On Hajenga's first visit, the chiropractor conducted an extensive physical examination. Hajenga returned several times for follow-up chiropractic treatment before learning that Progressive was denying payment of his medical bills asserting that the $1,000.00 payment was a full and final release of any bodily injury claim arising from the accident. The only medical bill paid by Progressive was the $167.05 bill for Hajenga's emergency room visit to Benefis Health Care in Great Falls a few days after the accident.

¶8 Hajenga filed suit on July 31, 2002, alleging negligence against Schwein and asking that the District Court declare the purported release null and void, and against public policy. Hajenga also asked that Progressive be sanctioned for egregious conduct.

---

[1] Progressive paid Hajenga $9,300.00 in a separate settlement for Hajenga's property damage claim.

¶9     On September 2, 2003, Hajenga moved for partial summary judgment requesting that the oral settlement agreement be set aside.  On September 17, 2003, Schwein moved for summary judgment requesting that the court render judgment in his favor based on the oral settlement agreement.  The District Court heard oral argument on both motions on December 4, 2003.  On April 21, 2004, the District Court issued its Order and Memorandum Denying Plaintiff's Motion for Partial Summary Judgment and Granting Defendant's Motion for Summary Judgment.

¶10    Hajenga appeals the District Court's order granting Schwein's Motion for Summary Judgment.  Hajenga does not appeal the court's denial of his Motion for Partial Summary Judgment.

**Standard of Review**

¶11    We review an order granting summary judgment de novo*,* using the same M. R. Civ. P. 56, criteria applied by the district court.  *Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶ 24, 304 Mont. 356, ¶ 24, 22 P.3d 631, ¶ 24 (citing *Spinler v. Allen*, 1999 MT 160, ¶ 14, 295 Mont. 139, ¶ 14, 983 P.2d 348, ¶ 14).  The purpose of summary judgment is to dispose of those actions which do not raise genuine issues of material fact and to eliminate the expense and burden of unnecessary trials.  *Boyes v. Eddie*, 1998 MT 311, ¶ 16, 292 Mont. 152, ¶ 16, 970 P.2d 91, ¶ 16 (citing *Kane v. Miller*, 258 Mont. 182, 186, 852 P.2d 130, 133 (1993)).  However, summary adjudication should "never be substituted for a trial if a material factual controversy exists," *Lee*, ¶ 71, thus we have observed that summary judgment is an extreme remedy that should be granted only when there is no

4

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, *Lee*, ¶ 25.

¶12     To determine the existence or nonexistence of a genuine issue of material fact, we look to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Lee*, ¶ 24 (citing *Erker v. Kester*, 1999 MT 231, ¶ 17, 296 Mont. 123, ¶ 17, 988 P.2d 1221, ¶ 17). In addition, all reasonable inferences that might be drawn from the offered evidence will be drawn in favor of the party opposing the summary judgment motion. *Lee*, ¶ 25.

¶13     The party seeking summary judgment has the burden of demonstrating a complete absence of any genuine factual issues. *Lee*, ¶ 25. Where the moving party is able to demonstrate that no genuine issue as to any material fact remains in dispute, the burden then shifts to the party opposing the motion. *Lee*, ¶ 26. To raise a genuine issue of material fact, the party opposing summary judgment must present material and substantial evidence rather than merely conclusory or speculative statements. *Lee*, ¶ 26. As this Court has previously observed, "proof is required to establish the absence of genuine issues of material fact; a party may not rely on the arguments of counsel." *Montana Metal Buildings, Inc. v. Shapiro*, 283 Mont. 471, 476, 942 P.2d 694, 697 (1997) (citing *City of Bozeman v. AIU Ins. Co.*, 262 Mont. 370, 378, 865 P.2d 268, 273 (1993)).

### Discussion

¶14     ***Did the District Court err in granting Schwein's Motion for Summary Judgment?***

¶15 In reaching its decision, the District Court relied on *Deserly v. Department. of Corrections*, 2000 MT 42, 298 Mont. 328, 995 P.2d 972, for the proposition that when a case involves cross-motions for summary judgment and the parties agree that no genuine issue of material fact exists, the court need only determine which party is entitled to judgment as a matter of law. While this is an accurate reading of that case, *Deserly* is distinguishable from the facts in the case before us.

¶16 In *Deserly*, the parties expressly stipulated at the close of discovery that there were no questions of material fact, hence they submitted the case to the district court for a decision. *Deserly*, ¶ 3. In the case *sub judice*, the parties did not so stipulate. Instead, the District Court determined that "[a]lthough the parties have not *per se* agreed that no issue of material fact exists . . . there is no issue of material fact that would preclude the Court from adjudicating as a matter of law."

¶17 Hajenga argues on appeal that the District Court erred by using the wrong standard for ruling on cross-motions for summary judgment and by failing to draw all reasonable inferences from the offered evidence in favor of the party opposing each summary judgment motion. Hajenga maintains that the fact that both parties moved for summary judgment did not serve to waive Hajenga's right to assert the existence of a question of fact relating to the terms of the settlement, and did not serve to authorize the District Court to sidestep questions of fact. We agree with Hajenga that the correct standard to apply in this case is found in *Ike v. Jefferson Nat. Life Ins. Co.*, 267 Mont. 396, 884 P.2d 471 (1994).

6

¶18 We stated in *Ike* that "the Montana Rules of Civil Procedure, like the Federal Rules of Civil Procedure, do not bar either party from claiming the existence of issues of fact sufficient to prevent entry of summary judgment against it, in spite of simultaneous motions for summary judgment by opposing parties." *Ike*, 267 Mont. at 399, 884 P.2d at 473-74 (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2nd Cir. 1993)). We further stated in *Ike* that

> [w]hen faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other. . . . "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."

*Ike,* 267 Mont. at 399-400, 884 P.2d at 474 (quoting *Heublein*, 996 F.2d at 1461)). "[T]he fact that both parties have moved for summary judgment does not establish, in and of itself, the absence of genuine issues of material fact." *Montana Metal Buildings,* 283 Mont. at 477, 942 P.2d at 698 (citing *Duensing v. Traveler's Companies*, 257 Mont. 376, 385, 849 P.2d 203, 209 (1993)).

¶19 Consequently, in evaluating cross motions for summary judgment, the District Court—and this Court in its de novo review—must evaluate each party's motion on its own merits. In his Motion for Partial Summary Judgment, Hajenga raised issues of rescission, mutual mistake of fact and that the agreement was unconscionable. However, because Hajenga did not appeal the denial of his Motion for Partial Summary Judgment, we need not address these issues, and our evaluation extends only to the merits of Schwein's Motion for Summary Judgment.

7

¶20 We first determine whether Schwein, as the moving party, met his burden of establishing the absence of genuine issues of material fact. Schwein asserted in his Motion for Summary Judgment that he was entitled to judgment as a matter of law because an "agreement was reached between the parties, the settlement amount together with a medical bill was paid, and the Plaintiff agreed to release Defendant." There is no written settlement agreement in this case, hence Schwein grounded his Motion for Summary Judgment on a recorded telephone conversation between Hajenga and a representative for Progressive. The relevant portion of that conversation follows:

> Progressive representative: Okay. Uh, do you agree and understand the draft I will be sending you in the amount of $1,000 and in further consideration the released parties agree to pay sums for reasonable, necessary medical and/or dental expenses incurred to you prior to the date of this accident which is your ER bill, um, provided such expenses reflect treatment for injuries arising from this loss and that this settlement of your bodily injury claim includes all (unintelligible) and constitutes the release of all your present and future bodily injury damages resulting from this loss?
> Hajenga: Mm-hmm.
> Progressive representative: Okay. Thank you for your time, um, basically what, just a recap, um, I'm going to be paying you $1,000 plus the cost of your medical bill. In exchange for that, you are releasing our insured Michael Schwein for the accident which occurred on or about May 23rd near Blue Creek Road and Jellison Road in Billings, Montana. Okay?
> Hajenga: And this is just for the injury part?
> Progressive representative: Yes.
> Hajenga: Okay.
> Progressive representative: It's got nothin' to do with your car. Okay? . . .

¶21 Hajenga argues on appeal that this oral settlement agreement is ambiguous and that there is a genuine issue of material fact as to whether ongoing medical expenses are covered by this agreement. Schwein maintains that Hajenga raised the issue of a

8

potential ambiguity in the oral settlement agreement for the first time on appeal, thus we should refuse to address this issue as we have repeatedly held that we do not address issues raised for the first time on appeal. *Keeney Const. v. James Talcott Const. Co.,* 2002 MT 69, ¶ 26, 309 Mont. 226, ¶ 26, 45 P.3d 19, ¶ 26 (citations omitted). As Schwein notes in his brief on appeal, the rationale for this rule is that it is unfair to fault a trial court for failing to rule on an issue it was never given the opportunity to consider. *Keeney*, ¶ 26.

¶22 Contrary to Schwein's assertions, the issue was raised and addressed in the trial court. In this regard, the District Court stated:

> Although the Progressive agent clearly misspoke when he stated that Progressive would pay for medical expenses incurred prior to the date of the accident, it does not appear to the Court that he meant to say that Progressive would pay for Plaintiff's future medical bills. . . . . Rather, it is likely that the Progressive agent meant to say that Plaintiff would be paid for his medical expenses "prior to this settlement" rather than "prior to this accident."

Consequently, we will address this issue as part of our discussion of whether material questions of fact remain thereby precluding summary judgment.

¶23 This Court recently observed that

> [a]n ambiguity exists when the contract wording is reasonably subject to two different interpretations. Whether an ambiguity exists is a question of law. *When a contract term is ambiguous, its interpretation requires a determination of a question of fact*: the real intention of the parties at the time of contracting.

*In re Marriage of Mease*, 2004 MT 59, ¶ 30, 320 Mont. 229, ¶ 30, 92 P.3d 1148, ¶ 30 (emphasis added and internal citations omitted).

9

¶24 As Hajenga points out in his brief on appeal, the Progressive representative misspoke when he referred to "expenses incurred *to* [Hajenga] *prior to* the date of this accident" (emphasis added). However, as already noted, in its Order granting Schwein's Motion for Summary Judgment, the District Court determined that "it is likely that the Progressive agent meant to say that [Hajenga] would be paid for his medical expenses 'prior to this settlement' rather than 'prior to this accident.'" Contrary to the District Court's assertion, it is equally likely that the Progressive representative meant to say that Hajenga would be paid for his medical expenses *resulting from* this accident.

¶25 In his filed affidavit, Hajenga stated that as he understood the conversation with the Progressive representative, the $1,000.00 was for Hajenga's pain and suffering and that Progressive would pay all medical expenses related to the injuries Hajenga received in the accident. This is evidenced by the fact that Hajenga sought treatment for his back problems the very next day after this telephone conversation and by the fact that he had the bills sent to Progressive.

¶26 In addition, in summing up the telephone conversation, the Progressive representative told Hajenga, "I'm going to be paying you $1000 *plus* the cost of your medical bill" (emphasis added). Rather than clarifying the earlier portion of the conversation as Schwein suggests, the phrase "plus the cost of your medical bill" is not qualified as referring only to the emergency room bill for $167.05, thus lending support to Hajenga's confusion as to whether this referred only to the emergency room bill or to the total medical bill for his injuries.

¶27 When making all reasonable inferences in favor of Hajenga's position as we are required to do, a material question of fact remains as to whether the Progressive representative's language commits Progressive to pay Hajenga's ongoing medical expenses. Certainly Hajenga understood the agreement to cover future medical expenses or he would not have had the bills sent to Progressive.

¶28 Moreover, the statements we are reviewing were not conveyed in a written form which Hajenga could read and consider, but were verbally spoken over the telephone by an insurance adjuster to a young person. And a mouthful of words they were, such as "in further consideration," "the released parties agree to pay sums for reasonable, necessary medical and/or dental expenses," "incurred to you prior to the date of this accident," "provided such expenses reflect treatment for injuries," and "constitutes the release," along with a couple of misstated or unclear words. When the context of a telephone conversation is considered, it becomes more evident that the words communicated could be subject to two interpretations, requiring a factfinder to resolve the issue. In failing to follow up the telephone conversation with written confirmation, Progressive assumed the very real risk that there could be a misunderstanding between the parties about the terms they had discussed.

¶29 In addition, the check for $1,000.00 that Hajenga received from Progressive contained the following endorsement: "FULL & FINAL SETTLEMENT OF BODILY INJURY CLAIM." Schwein argues that from this it should have been clear to Hajenga that he would receive no further payments for his medical expenses. However, the facts here belie Schwein's assertion as eleven days after this check was issued in "full & final

11

settlement" of the bodily injury claim, Progressive sent Hajenga a check for $167.05 for the emergency room bill. As a result, Hajenga's confusion regarding whether this endorsement referred to payment for future medical expenses was not unfounded.

¶30 Both parties conceded that the Progressive representative misspoke and that he did not always mean what he said in the telephone conversation. It is improper under these circumstances to conclude that there is no genuine issue of material fact as to the meaning of the oral settlement agreement. Consequently, summary judgment was inappropriate and it is for a jury to decide whether Hajenga and Progressive intended to settle Hajenga's future medical expenses for the sum of $1,000.00.

¶31 Finally, Hajenga argues in his brief on appeal, that allowing Progressive to avoid payment of Hajenga's medical bills on the facts of this case would fly in the face of the spirit of this Court's decision in *Ridley v. Guaranty Nat. Ins. Co.*, 286 Mont. 325, 951 P.2d 987 (1997). We stated in *Ridley* that

> [o]ne of the most significant obligations that innocent victims of automobile accidents incur and for which mandatory liability insurance laws were enacted, is the obligation to pay the costs of medical treatment. If the insurer has no obligation to pay those expenses in a timely fashion, even though liability is reasonably clear, then the protection provided by Montana's mandatory liability laws would be of little value.
> Medical expenses from even minor injuries can be devastating to a family of average income. The inability to pay them can damage credit and, as alleged in this case, sometimes preclude adequate treatment and recovery from the very injuries caused. Just as importantly, the financial stress of being unable to pay medical expenses can lead to the ill-advised settlement of other legitimate claims in order to secure a benefit to which an innocent victim of an automobile accident is clearly entitled. We conclude that this is not what was intended by the Montana Legislature when mandatory liability insurance laws and unfair claims practice laws were enacted.

*Ridley*, 286 Mont. at 335, 951 P.2d at 993. Underpinning Ridley was the view that insurance carriers should not be permitted to avoid payment of claims by using varying tactics including leveraging the payment of disputed claims. We leave to further proceedings in the trial court the determination of whether the use of the oral settlement discussion here constituted such a practice.

¶32 Accordingly, after reviewing this evidence and making all reasonable inferences in Hajenga's favor as the nonmoving party, we conclude that a factual dispute exists concerning whether the oral settlement agreement included coverage of future medical expenses thereby precluding summary judgment under M. R. Civ. P. 56(c).

¶33 Reversed and remanded for further proceedings consistent with this Opinion.


/S/ JAMES C. NELSON


We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JOHN WARNER
/S/ JIM RICE

13