FILED

04/29/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0315

DA 24-0315

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 86

IN THE MATTER OF THE ESTATE OF:

RICHARD EDWARD PAUL,

     Deceased.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDP-22-0286
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Shelbi L. Paul, Self-Represented, Fort Shaw, Montana

     For Appellee:

     Randy L. Tarum, Tarum Law Office P.C., Great Falls, Montana

Submitted on Briefs:  January 2, 2025

Decided:  April 29, 2025

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Shelbi L. Paul appeals an order from the Montana Eighth Judicial District Court, Cascade County, wherein the District Court granted the motion of Richann L. Ray, the Personal Representative of the Estate of Richard Edward Paul (the Estate), to authorize the Personal Representative to sell certain real property to heirs of the Estate. We affirm.

¶2 We consolidate and restate the issues raised on appeal as follows:

*Whether the District Court erred by issuing the Order Approving the Sale of Real Property.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Richard Edward Paul (Paul) died intestate on October 3, 2022. Paul was survived by his four daughters (collectively, the Heirs): Richann L. Ray (Richann), Dawn M. Paul Charron (Dawn), Shelbi L. Paul (Shelbi), and Danita J. Paul (Danita). With the consent of her sisters, Richann filed an Application for Informal Appointment of Personal Representative in Intestacy on November 21, 2022, which was granted by the Clerk of the District Court, who issued Letters of administration appointing Richann as Personal Representative of the Estate.

¶4 The Estate's significant asset is real property located in Lincoln, Montana (the Cabin). The Heirs could not come to a consensus on the disposition of the Cabin and conflict arose among them. On January 18, 2023, Shelbi filed a Motion for a Temporary Restraining Order in which she alleged that Richann had stated a desire to sell the Cabin, or otherwise cut Shelbi out of ownership, which Shelbi argued was contrary to both Richann's fiduciary duties as Personal Representative and their parents' desires. On

2

January 23, 2023, Richann filed a Personal Representative's Status Report with the District Court, wherein Richann stated "the [Cabin] is not listed for sale and there is no sale pending," and the "disposition of the [Cabin] is yet to be determined, however, any transfer or sale will be done either by consensus of the heirs, or pursuant to Montana law, with all heirs fully informed and participating in the process." The District Court conducted a hearing on Shelbi's motion, thereafter denying it and ordering that "[a]ny disputed issues shall be mediated before any contested hearings are set."

¶5 The Heirs continued to communicate via email regarding possible disposition of the Cabin. Dawn, Danita, and Richann in her capacity as an equal beneficiary of the Estate, presented to Shelbi five potential options for distribution. Shelbi expressed her preference by email for one of the options, and thereafter filed a Motion to Enforce Settlement Agreement wherein she argued that her email acceptance of one of the proposed options constituted a binding settlement agreement. The Estate and the remaining Heirs—Richann, Dawn, and Danita—opposed the motion, arguing the emails in question were merely communications exploring a resolution but that a binding contract had never been formed. The District Court denied Shelbi's motion, concluding "[Shelbi] ha[d] not shown the existence of a valid settlement agreement," and that the emails "at best consist[ed] of settlement negotiations."

¶6 On October 13, 2023, the Heirs proceeded to mediation regarding the Cabin. Hon. Gregory G. Pinski, retired District Court Judge, conducted the mediation, which yielded a General Release and Mediated Settlement Agreement (the Agreement). The Agreement provided a procedure for sale of the Cabin to one or more of the Heirs, conditioned upon

3

the Heirs qualifying and acting as provided therein within 30 days of the Cabin's appraisal.

Pertinent hereto, the Agreement provided as follows:

**1. Settlement Agreement**

A. Real Property.

The Real Property shall be appraised by a licensed real estate appraiser appointed by the Mediator. The appraised value shall be final, binding, and non-appealable.

Within 30 days of receiving the appraisal, if any of the four heirs chooses to buy the Real Property from the other heirs, they shall submit to the mediator proof of sufficient funds or qualification for financing to purchase the Real Property at the appraised value. Acceptable proof shall be in the form of recent bank statements, letter of credit or pre-qualification, all solely in the name of the heir seeking to purchase the Real Property. No third party other than the four heirs shall be eligible to purchase the Real Property at the appraised value. The Mediator shall make a final, binding, and non-appealable determination if a party's qualification documents are satisfactory and may request additional documentation from the heir in the Mediator's sole discretion.

If all four heirs are qualified and desire to purchase the Real Property, the house shall be listed for sale with a realtor appointed by the Mediator. The four heirs and any interested third-party may purchase the Real Property on the open market at that time.

If some but not all of the four heirs are qualified and desire to purchase the Real Property, they may purchase the fractional share of the unqualified heir(s) at the appraised value with closing to occur within 30 days of the appraisal at a title company appointed by the Mediator.

.   .   .

**6. Dismissal of Civil Actions**.

The Parties agree upon the sale of the Real property and preparation of the final accounting, the Personal Representative shall close the Estate. Each party shall be responsible for their own attorney's fees and costs.

.   .   .

4

**12. Default**.

In the event of a dispute under this Agreement, before seeking court involvement in such dispute, the parties shall return to the Mediator in an attempt to resolve any disputes.

.   .   .

**14. Specific Performance**.

Specific performance of this Agreement may be required by any of the Parties to this agreement.

¶7     In accordance with the Agreement, the Cabin was appraised and reported to be valued at $234,000.  None of the Heirs thereafter submitted a bid to buy the Cabin within 30 days of the appraisal.  On January 2, 2024, Richann listed the Cabin for sale with a Lincoln-based real estate company, at the appraised price of $234,000.  Further, Richann obtained a property inspection that detailed extensive issues with the Cabin, and retained an engineering firm to analyze the interior construction and foundation.  The engineering report recommended repairs to improve the structural integrity of the Cabin.  Richann then obtained a bid from a construction company to address the issues identified by the inspection and analysis.  The bid itemized the individual repairs and estimated the total repair cost to be $127,900.

¶8     In March 2024, Richann, as Personal Representative, filed a motion to approve the sale of the Cabin, requesting the District Court approve an offer to purchase made by Richann, Dawn, and Danita for $106,100, which was the appraised value less the estimated repairs, and a payment to Shelbi of her 25% equal interest of that sale price, or $26,525.  Richann's filings stated that there had been "numerous inquiries and showings of the

5

property" after it was listed for the appraisal price, but that "due to the numerous structural problems and significant costs of repair, there was only one offer to purchase the property from a third party which was later withdrawn." Shelbi opposed the motion, arguing in her briefing that none of the Heirs qualified under the Agreement to purchase the property, the Cabin "had never been fully and fairly marketed due to [Richann] immediately accepting a contingency offer," and after merely "wait[ing] a few months," Richann had accepted "a low-ball offer from herself." Shelbi argued that, if the Cabin was to be sold, it should be "fairly and fully marketed for sale by a different [real estate company]," and that "[n]o offer less than the appraised [sic] should be accepted without approval and no contingencies made." She also requested payment of damages that she alleged were caused by Richann's neglect in administering the Estate.[1]

¶9 On April 22, 2024, the District Court entered an order approving the motion, reasoning that "[t]he Agreement resolved all issues between the parties and released all current and future claims concerning the Estate's administration," that "the Agreement resolved the issue of the real property by stipulating that the property would be sold to either one or more of the Heirs or a third party," and finding that "[t]he only viable offer to purchase the real property of the Estate [was] the offer by [Richann], [Dawn], and [Danita] to purchase the property and buy out Shelbi Paul's interest in the property." Regarding the purchase price, the District Court found that "the offer to purchase the real property for

---

[1] Attached to Richann's motion for approval were the structural engineer's reports, the construction company's estimate to complete the recommended repair work, and the Agreement. After Shelbi filed her response objecting to the motion, Richann filed a reply to which she attached her affidavit. On appeal, Shelbi contests the validity of the affidavit, which we address later herein.

6

$106,100 . . . [was] reasonable and in the best interest of the Estate." Therefore, the District Court authorized the Personal Representative to sell the Cabin to herself, Dawn, and Danita, with each of them receiving a credit for $26,525 at closing, and that Richann, Dawn, and Danita would pay Shelbi $26,525 for her undivided 25% interest in the real property as an heir.

¶10 On May 7, 2024, Shelbi filed a pleading titled "Motion for Leave to File," in which she took issue with the failure of the District Court to send a copy of the Order to her within 10 days of entry and indicating an intention to file one or more additional motions. The District Court denied the motion, expressing that the "basis for, and relief sought, in [Shelbi's] motion is unclear. It appears she is asking the [District] Court to reconsider its Order. [Shelbi] has not shown good cause to grant her Motion." Shelbi thereafter filed another motion titled "Motion to Alter, Amend, or Reconsider the Findings of Fact of the Order Dated 4/22/2024 (Rule 59 M.R.Civ.P.[)] And/Or Motion to Set Aside or Vacate the Order Dated 4/22/2024 (Rule 60 M.R.Civ.P.[)]." On May 13, 2024, the District Court denied this motion, stating:

> The Court has ruled. The ruling will not be reconsidered. [Shelbi] continues to ignore the Court's orders and persists in attempting to relitigate what she feels was an unfair outcome. [Shelbi] has not shown good cause to grant her Motion.

¶11 Shelbi appeals from the order approving the sale of the cabin.

## STANDARD OF REVIEW

¶12 In estate and probate matters, an order refusing, allowing, or directing the distribution of any estate or part thereof is considered final and appealable.

7

M. R. App. P. 6(4)(e). "We review a district court's order regarding the partial distribution of estate assets for clear error or abuse of discretion." *In re Estate of Ayers*, 2007 MT 155, ¶ 12, 338 Mont. 12, 161 P.3d 833 (citing *In re Estate of Barber*, 216 Mont. 26, 27-28, 699 P.2d 90, 91 (1985)). "We review a district court's findings of fact to determine whether they are clearly erroneous." *In re Estate of Williams*, 2023 MT 72, ¶ 16, 412 Mont. 58, 528 P.3d 1087 (citing *In re Estate of Kuralt*, 2000 MT 359, ¶ 14, 303 Mont. 335, 15 P.3d 931).

¶13     "The interpretation of a written contract is a question of law, which we review to determine whether the district court's interpretation is correct." *Kalispell Aircraft Co., LLC v. Patterson*, 2019 MT 142, ¶ 17, 396 Mont. 182, 443 P.3d 1100 (citing *King Res., Inc. v. Oliver*, 2002 MT 301, ¶ 18, 313 Mont. 17, 59 P.3d 1172). Settlement agreements are contracts, subject to the provisions of contract law. *Jarussi v. Sandra L. Farber Tr.*, 2019 MT 181, ¶ 15, 396 Mont. 488, 445 P.3d 1226 (citing *Dambrowski v. Champion Int'l Corp.*, 2003 MT 233, ¶ 9, 317 Mont. 218, 76 P.3d 1080). "In situations in which the terms of the contract are clear and unambiguous, it is the duty of the court to enforce the contract as the parties intended." *Sayegusa v. Rogers*, 256 Mont. 269, 271, 846 P.2d 1005, 1006 (1993) (citing *First Sec. Bank v. Vander Pas*, 250 Mont. 148, 818 P.2d 384 (1991)).

¶14     "We will not reverse the District Court when it reaches the right result, even if for the wrong reason." *Hubbell v. Gull Scuba Ctr., LLC*, 2024 MT 247, ¶ 24, 418 Mont. 399, 558 P.3d 1094.

**DISCUSSION**

¶15 Shelbi argues that, while the District Court correctly concluded the Agreement controlled resolution of this dispute, it nonetheless erred in interpreting the Agreement. She contends the Cabin's sale for $106,100 is well below the binding appraisal value and thus violates the plain and unambiguous terms of the Agreement. Further, Shelbi argues Section 6 of the Agreement governs when no heir qualifies as purchaser within the 30-day time limit, and requires distribution by intestate succession, because "the estate will close at that point." She contends the District Court should have ordered the parties back to mediation pursuant to Section 12 or ordered specific performance under Section 14. Finally, Shelbi argues the District Court's approval of the sale on the ground of "the best interest of the estate" violates § 72-3-915, MCA, which authorizes distribution agreements among heirs, and applies here rather than the general estate administration provisions of § 72-3-613, MCA.

¶16 The Estate responds that the Agreement "was silent" and clearly did not contemplate *any* procedure for disposition of the Cabin if no sale occurred pursuant to the Agreement's terms, and thus simply "did not address what was to happen where none of the heirs would present a qualified bid." While urging the order be affirmed, the Estate's argument nonetheless offers an alternative rationale to the District Court's reasoning that "[t]he Agreement resolved all issues between the parties," including "the issue of the real property." The Estate offers that because no sale occurred within the 30-day qualifying framework, the Agreement does not control, and Richann, as Personal Representative, properly exercised general statutory authority as Personal Representative under Title 72 to

9

sell the Cabin. Further, as a matter of proof, the Estate argues that the evidence supported the District Court's findings regarding the necessity and reasonableness of the proposed sale, which was not evidentiarily rebutted by Shelbi. We agree with the Estate's position.

¶17 Shelbi is correct that § 72-3-915, MCA, authorizes agreements among successors of an estate:

> Subject to the rights of creditors and taxing authorities, competent successors *may agree among themselves* to alter the interests, shares, or amounts to which they are entitled under the will of a decedent or under the laws of intestacy in any way that they provide in a written contract executed by all who are affected by its provisions. The personal representative *shall abide by the terms of the agreement* subject to the obligation to administer the estate for the benefit of creditors, to pay all taxes and costs of administration, and to carry out the responsibilities of the personal representative's office for the benefit of any successors of the decedent who are not parties.

Section 72-3-915(1), MCA (emphasis added). However, here the unambiguous language of the Agreement provided the settlement parameters, including a procedure permitting purchase of the Cabin by "any," "some," or "all" of the Heirs, conditioned upon that Heir or Heirs qualifying financially within the designated time period:

> Within 30 days of receiving the appraisal, *if any of the four heirs chooses to buy* the Real Property from the other heirs, they shall submit to the mediator proof of sufficient funds or qualification for financing to purchase the Real Property at the appraised value. . . . *If all four heirs are qualified and desire to purchase* the Real Property, the house shall be listed for sale with a realtor appointed by the Mediator. . . . *If some but not all of the four heirs are qualified and desire to purchase* the Real Property, they may purchase the fractional share of the unqualified heir(s) at the appraised value with closing to occur within 30 days of the appraisal at a title company appointed by the Mediator.

(Emphasis added.) Critically, the Agreement simply did not contemplate or address what would happen if *none* of the Heirs desired to purchase and qualified to purchase the Cabin

10

within 30 days of receiving the appraisal. This Court cannot insert provisions omitted from a contract. *See Martin v. Laurel Cable TV, Inc.*, 215 Mont. 229, 233, 696 P.2d 454, 457 (1985) ("The role of the judge is to construe an instrument according to its terms or its substance, not to insert or omit terms."). Thus, while Shelbi is correct that § 72-3-915, MCA, authorizes an agreement among heirs to be honored, here, the Heirs' Agreement did not address and therefore could not control the outcome when none of the Heirs acted pursuant to the Agreement's stated procedure to purchase the Cabin.

¶18    Shelbi argues that Section 6 of the Agreement provided for a procedure to distribute the Cabin in the situation where no Heir purchased it, but that paragraph merely provides that, "upon the sale" of the Cabin, the Personal Representative will close the estate. Of course, the Cabin was not sold pursuant to the Agreement. Shelbi contends that Section 12 of the Agreement required the parties to return to mediation, but that paragraph provides a mechanism for resolving disputes "under the Agreement," and could not apply if the Agreement did not control. Lastly, Shelbi argues specific performance should have been ordered under Section 14, but, likewise, that provision authorized specific performance "of this Agreement," and we have concluded above that the Agreement did not apply because its express conditions were not satisfied.

¶19    Subject to her fiduciary duty, a personal representative is authorized by the Montana Probate Code to undertake various transactions related to estate administration:

> [A] personal representative, acting reasonably for the benefit of the interested persons, may properly:

.    .    .

11

(23) *sell, mortgage, or lease any real or personal property of the estate* or any interest therein for cash, credit, or for part cash and part credit and with or without security for unpaid balances.

Section 72-3-613(23), MCA (emphasis added). A personal representative must settle and distribute an estate "expeditiously and efficiently as is consistent with the best interests of the estate," and use her statutorily granted authority for "the best interests of the successors to the estate." Section 72-3-610, MCA. A personal representative may "invoke the jurisdiction of the court" to resolve issues related to distribution, which includes a motion to approve the sale of estate assets. *See* § 72-3-605, MCA.

¶20 Here, Richann, as the properly appointed Personal Representative of the Estate, possessed statutory authority to sell the Cabin, and exercised authority provided by statute to seek the court's approval of the proposed sale and the simultaneous buyout of Shelbi's interest. Upon review of the evidence provided, the District Court found that the sale for the amount of $106,100 was reasonable and in the best interest of the Estate. Though we reach the same conclusion by a different legal rationale, upon our review, we conclude the District Court's findings were supported by substantial evidence, and that it did not abuse its discretion by approving the sale.

¶21 Finally, Shelbi challenges the affidavit by Richann that was attached to the Personal Representative's Reply to Shelbi's objection as "improperly attached." However, Shelbi did not raise this particular issue in the District Court, and "[it] is well-established that we will not address issues on appeal which were not properly raised in the district court." *Nason v. Leistiko*, 1998 MT 217, ¶ 11, 290 Mont. 460, 963 P.2d 1279. Shelbi takes issue with the affidavit presenting "an entirely new standing argument and interpretation of the

Agreement," and argues she filed her motions for leave to file post-judgment motions "for the purpose of rebutting this never before seen or heard standing." However, Shelbi's motions before the District Court do not mention the affidavit nor the reply brief, and instead appear to take issue with an asserted failure to timely send a copy of the order to Shelbi, as well as a general disagreement with the District Court's decision. There is no motion to strike the affidavit, nor any record that the District Court was made aware of the argument Shelbi now presents to this Court. Thus, this issue was not preserved for appeal. Even so, there was other evidence provided to the District Court to support its findings.

¶22    Affirmed.

/S/ JIM RICE

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON