No. 96-456

## IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

DAVID E. RIEMAN, FRANCES S.
RIEMAN, DIANNE L. CHRISTMANN,
ALLEN H. CHRISTMANN, RICHARD D.
TEBAY, GUY WEIMER and JANICE WEIMER,

        Plaintiffs and Appellants,

   v.

ROGER ANDERSON, TED BERST, MINNIE
BERST, MIKE McCOY, DIANE McCOY, and
CLARINE STOVALL,

        Defendants and Respondents.

FILED

APR 8 1997

CLERK

APPEAL FROM:   District Court of the Thirteenth Judicial District,
                  In and for the County of Yellowstone,
                  The Honorable Maurice R. Colberg, Jr., Judge Presiding.

COUNSEL OF RECORD:

        For Appellants:

                Gary L. Spaeth, Attorney at Law, Helena, Montana

        For Respondents:

                James A. Hubble; Hubble & Ridgeway, Stanford, Montana

Submitted on Briefs: March 6, 1997

Decided: April 8, 1997

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

David and Francis Rieman, Dianne and Allen Christmann, Guy and Janice Weimer, and Richard Tebay (Appellants) sought a determination of their easement right to use the Nutting Ditch and its laterals, damages caused by interference with that right, and attorney fees. The Thirteenth Judicial District Court, Yellowstone County, concluded that Appellants' predecessor in interest had abandoned his ditch easement, and awarded attorney fees to Respondents. We affirm.

Appellants raise five issues on appeal:

1. Do Respondents have standing to raise abandonment?

2. Did the District Court err when it concluded that Appellants' predecessor in interest abandoned his ditch easement?

3. Did the District Court err when it concluded that Appellants' predecessor in interest had authority to abandon his ditch easement?

4. Did the District Court err when it concluded that a ditch easement can be abandoned even though the easement continued to be used by Respondents?

5. Did the District Court err in awarding attorney fees to Respondents?

BACKGROUND

The Old Mill Ditch Company, Inc., is a Montana corporation that diverts water from the Yellowstone River to the Nutting Ditch based on water shares owned by lateral users. Old Mill does not claim an interest in the Nutting Ditch or its laterals. The Nutting Ditch

2

flows through sections of Stillwater and Yellowstone Counties from a headgate located on the Old Mill Ditch in Section 27, Township 2 South, Range 23 East, M.P.M., Stillwater County, Montana. The disputed side lateral diverts from the Nutting Ditch on property owned by Guy and Janice Weimer in the SE1/4 NE1/4 of Section 26, Township 2 South, Range 23 East, M.P.M., Stillwater County, Montana. (See attached map.)

Appellants, except the Weimers, own real property in Section 25, Township 2 South, Range 23 East, M.P.M., Yellowstone County, Montana, and trace ownership of their real property and Old Mill stock to Larry Myers. Roger Anderson, Ted and Minnie Berst, Mike and Diane McCoy, and Clarine Stovall (Respondents) are owners of real property located east of Appellants, and use water from the Old Mill and Nutting Ditches.

Owners of Old Mill stock are entitled to use water from the Old Mill Ditch. Appellants and Respondents own Old Mill stock as follows:

| Riemans | 14 shares | Anderson | 18 shares |
| Christmanns | 3 shares | Bersts | 7 shares |
| Tebay | 20 shares | McCoys | 53 shares |
| Weimers | 4 shares | Stovall | 38 shares |

It is undisputed that before 1974, Appellants and Respondents, or their predecessors in interest, except the Weimers, had a ditch easement to use the Nutting Ditch to transport water from the Old Mill Ditch to their properties. Respondents have an easement in the Nutting Ditch to transport water to their property located down ditch from Appellants.

In 1972, Myers purchased real property located in Section 25, Township 2 South, Range 23 East, M.P.M., Yellowstone County, Montana, and acquired Old Mill stock with

3

it. Two years later he mortgaged the property to John Hancock Mutual Life Insurance Company. Until 1976, he irrigated the property by using a side lateral from the Nutting Ditch. Myers' historical access for the side lateral was a diversion located on the Nutting Ditch on property now owned by the Weimers.

In 1974, Myers stopped paying the assessments for his shares of Old Mill stock. Thereafter, they were paid by John Hancock. In 1975, because Myers was experiencing financial difficulties, he decided to try to subdivide his property. He contacted Harlan Lund, a surveyor, who prepared a certificate of survey subdividing the property into twenty-acre residential tracts.

During preparation of the survey, Myers and Lund discussed the gravelly soil and high water table on Myers' property. These conditions could prevent the property from being subdivided into residential tracts with underground septic systems. From 1974 to 1981, Myers informed Lund and neighboring landowners that he did not intend to further irrigate his property. In 1975, he plugged the diversion from the Nutting Ditch to his side lateral by filling it with dirt. At approximately the same time, he built a rough road system for his proposed subdivision and, in the process, plowed in his irrigation ditches. After 1976, Myers did not irrigate into his side lateral or assist in maintaining the Nutting Ditch. In the early 1980s, he removed several culverts along the side lateral so that water could not flow onto his property.

In September 1976, John Hancock commenced foreclosure proceedings against

4

Myers' property. Plaintiffs, except the Weimers, acquired their property from James Murphy, the Federal District Court trustee responsible for selling Myers' property. In conjunction with the sale, Murphy transferred shares of Old Mill stock to the Riemans, Christmanns, and Tebay. He took the position that the stock did not guarantee that its holders would receive water. The Weimers' predecessor in interest did not use the Nutting Ditch. Instead, the Weimers acquired Old Mill stock from individuals other than the predecessors in interest to their property.

In 1991 and 1992, the Weimers attempted to pump water from the Nutting Ditch. At approximately the same time, the remaining Appellants attempted to access water from the Nutting Ditch into the side lateral by reopening Myers' historical diversion. Respondents learned of the pump and diversion and had them removed.

On May 13, 1993, Appellants filed a complaint claiming a right to use the Nutting Ditch, and its laterals that Respondents interfered with their right to use the ditch, and requesting damages and attorney fees. Respondents asserted as an affirmative defense that Myers had abandoned his easement in the Nutting Ditch before the Riemans, Christmanns, and Tebay acquired title to their property, and that the Weimers never possessed an easement to use the Nutting Ditch.

Following a five-day trial, the District Court, sitting without a jury, concluded that the Weimers never had an easement to use the Nutting Ditch. It further concluded that the Nutting Ditch easement formerly owned by Myers, as predecessor in interest to the Riemans,

5

Christmanns, and Tebay, was abandoned by Myers as demonstrated by his acts and expressions of intent from 1974 to 1981. The court also awarded attorney fees to Respondents pursuant to § 70-17-112(5), MCA. This appeal followed.

## DISCUSSION

1. Do Respondents have standing to raise abandonment?

A district court's ruling on standing is a conclusion of law. We review conclusions of law to determine whether the district court's interpretation of the law is correct. Jim's Excavating Service v. HKM Assoc. (1994), 265 Mont. 494, 501, 878 P.2d 248, 252.

Appellants argue that Respondents lack standing to assert the affirmative defense of abandonment because Respondents are co-owners of the Nutting Ditch, the dominant easement. Appellants assert that abandonment should be reserved as a defense for the owners of the servient easement--i.e. up ditch landowners not parties to this action. Respondents claim that the District Court raised standing for the first time after the trial had been completed, therefore barring its consideration on appeal.

Objections to standing cannot be waived and may be raised by a court sua sponte. Stewart v. Bd. of Cty. Com'rs of Big Horn Cty. (1977), 175 Mont. 197, 294, 573 P.2d 184, 188. We conclude that the issue of Respondents' standing to assert abandonment as an affirmative defense is properly before this Court.

Respondents in this case have a personal stake in the litigation. Respondents, all ranchers, would have to share a ditch easement and water flowing therein with many more

people than they did when Myers irrigated his property. If Appellants prevailed, Respondents would also be required to pay attorney fees and damages for interfering with Appellants' pump and diversion systems.

Therefore, we hold that Respondents have standing to assert all their defenses, including an affirmative defense that Appellants' predecessor in interest abandoned his easement to use the Nutting Ditch. The District Court did not err when it concluded that Respondents have standing.

2.      Did the District Court err when it concluded that Appellants' predecessor in interest abandoned his ditch easement?

Abandonment is a question of fact. Thomas v. Ball (1923), 66 Mont. 161, 166, 213 P. 597, 599. This Court reviews findings to determine whether they are clearly erroneous by using a three-part test.

> First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of the evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended the Court may still find that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed.

Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287 (citation omitted).

The Montana Supreme Court has previously explained the requirements to prove abandonment.

7

> In order for there to be abandonment there must be an intent to abandon. An intent to abandon has not been found from mere nonuse. Abandonment means a voluntary act involving a concurrence of act and intent. The act is the relinquishment of possession and the intent is a manifestation not to resume beneficial use of it. Neither of the elements alone is sufficient.

Shammel v. Vogl (1964), 144 Mont. 354, 359, 396 P.2d 103, 106. The party claiming abandonment must prove that the "acts claimed to constitute the abandonment [are] of a character so decisive and conclusive as to indicate a clear intent to abandon the easement." City of Billings v. O.E. Lee Co. (1975), 168 Mont. 264, 268, 542 P.2d 97, 99.

The District Court found that Myers plugged the diversion from the Nutting Ditch to his side lateral by filling it with dirt. He plowed in his ditches and made statements to neighboring landowners of his intent to no longer irrigate. Myers hired a surveyor to prepare a subdivision but, in order to sell the tracts, he had to lower the water table on the property. This meant that after 1975 he could no longer irrigate. In the early 1980s, Myers removed several culverts so that water could not flow onto his property. These findings are not clearly erroneous.

Although there is evidence that Myers placed canvas and wooden diversions in the Nutting Ditch on several occasions during the 1980s, these acts are contrary to Myers' historical use of the Nutting Ditch, which was limited to diverting water into his side lateral. Myers' later diversions did not manifest an intent to resume beneficial use of his easement.

Appellants also argue that because there was water flowing down the Nutting Ditch which belonged to Myers, that he did not abandon his easement. This argument confuses the

8

difference between water rights and a ditch easement. Water rights and ditch rights are separate and distinct rights. McDonnell v. Huffine (1912), 44 Mont. 411, 422-23, 120 P. 792, 795. One can be abandoned without abandoning the other. McDonnell, 120 P. at 795. A person may own a water right without a ditch right, or own a ditch right without a water right. McDonnell, 120 P. at 792.

We conclude that the District Court's finding that Myers abandoned his easement in the Nutting Ditch between 1975 and 1981 is supported by substantial evidence. Further, in accordance with DeSaye, we determine that the court did not misapprehend the effect of the evidence. Finally, after a review of the record, we are not left with a definite and firm conviction that a mistake has been committed. Accordingly, we hold that the District Court's finding that Myers abandoned his Nutting Ditch easement is not clearly erroneous.

3.      Did the District Court err when it concluded that Appellants' predecessor in interest had authority to abandon his ditch easement?

Appellants contend that Myers did not own, and therefore could not evidence the intent to abandon his ditch easement, because he transferred his property to his wife, Sandra Diane Myers. Appellants further argue that after John Hancock initiated foreclosure proceedings against Myers' property, that Myers lacked authority to abandon his ditch easement. These contentions are made without any citation to legal authority.

At trial, Appellants did not offer into evidence any deeds or mortgage documents regarding Myers' interest in his property. On appeal, they provide no legal authority for their abandonment argument. An appellant carries the burden of establishing error by the trial

court. Moreover, Rule 23, M.R.App.P., requires the appellant to cite to authority which supports the position being advanced on appeal. Appellants' argument is nonpersuasive and we decline to address it on appeal.

4.    Did the District Court err when it concluded that a ditch easement can be abandoned even though the easement continued to be used by Respondents?

Appellants argue that because water continued to flow through the Nutting Ditch across the lands of servient easement holders to Respondents, that Respondents cannot claim abandonment. Appellants suggest that Respondents want Myers' ditch easement abandoned, but not their own. Between 1974 and 1981, Myers evidenced the intent to abandon his Nutting Ditch easement. Although Myers abandoned his ditch easement, this does not mean that Respondents, as co-owners of the easement, also abandoned their right to use it.

We hold that the District Court did not err when it concluded that Myers abandoned his easement to use the Nutting Ditch even though Respondents continued to use the ditch.

5.    Did the District Court err in awarding attorney fees to Respondents?

Appellants argue that they should not be required to pay attorney fees because this case did not involve interference, but focused instead on whether Appellants' easement had been abandoned.

Section 70-17-112, MCA, provides:

> (2) No person may encroach upon or otherwise impair any easement for a canal or ditch used for irrigation or any other lawful domestic or commercial purpose, including carrying return water.
> . . . .
> (5) If a legal action is brought to enforce the provisions of this section,

the prevailing party is entitled to costs and reasonable attorney's fees.

Appellants brought this case pursuant to § 70-17-112, MCA, pleaded interference with their easement, and claimed damages as a result. Respondents counterclaimed based on Appellants' interference and, at trial, proved that Appellants improperly pumped and diverted water from the Nutting Ditch.

In Sharon v. Hayden (1990), 246 Mont. 186, 803 P.2d 1083, the defendants were the prevailing parties in a case brought to enforce ditch easement rights under § 70-17-112, MCA. We held that because the defendants successfully enforced the provisions of § 70-17-112, MCA, they were entitled to costs and reasonable attorney fees.

Here, the District Court determined that Respondents were prevailing parties on all issues and ordered a hearing for calculation of attorney fees. Under § 70-17-112(5), MCA, Respondents prevailed on all issues and are entitled to attorney fees as a matter of law. We hold that the District Court did not err in awarding attorney fees to Respondents.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

11

