FILED

04/07/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0190

DA 25-0190

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 73

JAMES J. DOLAN, JR. and SAMANTHA L. DOLAN,

       Plaintiffs and Appellants,

   v.

JAKE CEARTIN and ANDREA CEARTIN,

       Defendants,

TRACY GUENTHER, JESSE GUENTHER,
and COBB HILL MINOR SUBDIVISION
HOMEOWNERS' ASSOCIATION,

       Defendants and Appellees.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                 In and For the County of Gallatin, Cause No. DV-18-633-C
                 Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

       For Appellants James J. Dolan Jr., and Samantha Dolan:

          W. John Tietz, Hallee C. Frandsen, Browning, Kaleczyc, Berry & Hoven,
          P.C., Helena, Montana

          Calvin J. Stacey, Stacey & Funyak, Billings, Montana

       For Appellees Tracy Guenther and Jessie Guenther:

          Robert K. Baldwin, William Guy Thomas, Baldwin Law, PLLC, Bozeman,
          Montana

                          Submitted on Briefs: February 4, 2026
                                Decided:  April 7, 2026

Filed:

                          _____
                                   Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 James Dolan, Jr. and Samantha Dolan appeal the Eighteenth Judicial District Court's grant of partial summary judgment in favor of Tracy and Jesse Guenther and its subsequent denial of the Dolans' partial summary judgment motion. On both motions, the District Court concluded that the Dolans did not have a ditch easement and, therefore, did not have a claim against the Guenthers for ditch interference. We restate the following issues on appeal:

> 1. *Did the District Court correctly determine that the Dolans do not hold an implied easement by existing use to a ditch that crosses the Cobb Hill Minor Subdivision property?*

> 2. *Are the Guenthers entitled to attorney fees and costs, including those incurred on appeal?*

Though we do not adopt all of the District Court's rationale, we affirm its rulings. Because the Guenthers accordingly are entitled to attorney fees and costs incurred on appeal, we remand for the District Court to determine a reasonable amount of fees and costs.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 The Guenthers and the Dolans are homeowners in the five-lot Cobb Hill Minor Subdivision located in Gallatin County near Four Corners, Montana. The land historically was used as pasture and hay ground for horses. Previous landowners diverted water from South Dry Creek through the Myron-Ferris Ditch, which split into two lateral ditches and delivered water to different areas of the property. In 2006, Cobb Hill, LLC acquired and subdivided the property.

2

¶3    As part of the subdivision process, the Department of Environmental Quality (DEQ) issued Cobb Hill, LLC a certificate of subdivision approval (COSA) under Montana's subdivision sanitation regulations. Title 76, ch. 4, part 1, MCA. The COSA required that "the small 'feeder' irrigation ditches across the lots . . . be abandoned," excluding an irrigation ditch running along the east boundary of the subdivision.[1] The COSA provided that "no sewage treatment system shall be constructed within 100 feet of . . . [an] irrigation ditch . . . [or] any domestic water supply source" and that all "water supply systems, sewage treatment systems, and storm drainage systems [and sanitary facilities] . . . be located as shown on the approved plans." The terms of the COSA also required Cobb Hill, LLC to provide lot purchasers with a copy of the COSA and the plat approval. Subsequent instruments transferring the lots also needed to reference the COSA's conditions.

¶4    Cobb Hill Minor Subdivision consists of one cul-de-sac surrounded by five lots. Lots 1 and 2 are located on the west side of the cul-de-sac, and Lots 3, 4, and 5 are located on the east side.

---

[1] The referenced ditch on the east boundary of the subdivision is part of the Myron-Ferris Ditch; the Dolans do not argue that it is the ditch at issue in this case.



*Figure 1: Depiction of final plat for Cobb Hill Minor Subdivision; ownership annotations added by the Guenthers in their response brief filed on appeal.*

Cobb Hill, LLC conveyed lot 5 to Michael and Joni Westfall in 2006 and Lots 1, 2, 3, and 4 to Ewing Trust by a single transaction in 2009. Jake and Andrea Ceartin purchased Lot 2 from Ewing Trust in 2009 and conveyed it to the Dolans in 2015. In 2016, the Dolans purchased Lot 3 from Ewing Trust. That same year, Ewing Trust conveyed Lot 4 to the Guenthers and transferred Lot 1 to the Ceartins. Running along the east side of the

4

cul-de-sac is a small ditch described variably by the parties as a "feeder ditch, a lateral ditch, and a seasonal stream." The ditch flows from the south to the north and cuts through the Westfalls' Lot 5 and the west end of the Guenthers' Lot 4, then through the south end of the Dolans' Lot 3, eventually reaching the Dolans' Lot 2.

¶5 The Ceartins believed that the ditch conveyed the water right appurtenant to their land and used the water passively to water trees on Lot 2 when they owned the property. The Dolans continued to water the trees and grass with the water flowing in the ditch after they acquired the property from the Ceartins. When the Dolans inquired about the water rights and ditch before purchasing Lot 2, an e-mail from the Ceartins' realtor to the Dolans' realtor explained that the ditch was owned by "all the water users," that all users had an obligation to maintain the stretch within their property, and that Lot 2's water rights were conveyed through the ditch.[2]

¶6 In May 2016 and shortly after the Guenthers purchased Lot 4, the Gallatin City-County Health Department (Health Department) received a complaint that Lot 4's approved drain field site was within thirty feet of the ditch. In April 2017, the Health

---

[2] On September 30, 2015, the Dolans filed forms in the Water Court to split ownership of the water right that they shared with other Cobb Hill Minor Subdivision landowners. The Guenthers objected to the Dolans' split request, arguing that the COSA's requirement to abandon the feeder ditches also required that the Dolans abandon their water right. In November 2019, the Water Court issued findings of fact, conclusions of law, and an order on the Guenthers' objection. The Water Court noted in its findings, "It is far from clear whether the 'small feeder ditches' include the west or east laterals that have delivered water to Lots 2 and 3." The Water Court found that the Dolans had not abandoned their water right, noting that water rights and ditch rights are separate and distinct rights. *See Reiman v. Anderson*, 282 Mont. 139, 146, 935 P.2d 1122, 1126 (1997) ("A person may own a water right without a ditch right, or own a ditch right without a water right." (citation omitted)).

Department denied the Guenthers' drain field installation, noting that the Guenthers "must have the [COSA] rewritten to allow the ditch to continue conveying surface water" or present an alternative to the Health Department. That same month, the DEQ sent letters to all property owners of the Cobb Hill Minor Subdivision, stating that they were in violation of the COSA and DEQ regulations. The letters explained that the ditch impeded proper stormwater drainage, affected high groundwater levels, and rendered the drain fields in violation of setback requirements between surface water and sewage treatment systems.

¶7 To come into compliance with the DEQ's subdivision regulations, the Guenthers installed culverts on Lots 4 and 5. The Health Department filed an expedited rewrite of the COSA identifying the culverts' locations, which the DEQ approved. With the culverts installed, the Health Department authorized the Guenthers' drain field.

¶8 In June 2018, the Dolans filed a complaint against the Guenthers and Westfalls, alleging that the Defendants' installation of the culverts unlawfully interfered with their ditch easement.[3] The Dolans prayed for judgment declaring the rights of the parties with respect to the easement; injunctions mandating removal of the culverts and allowing access for maintenance to the ditch; an injunction prohibiting any future interference with the ditch; damages, including punitive damages; and attorney fees and costs pursuant to § 70-17-112(5), MCA. The Dolans amended their complaint in April 2019 to include the

---

[3] The Westfalls and Dolans reached a settlement of their claims at trial.

Ceartins[4] and Cobb Hill Minor Subdivision Homeowners' Association as Defendants and added violation of its covenant as a cause of action.[5]

¶9 In July 2019, the Guenthers filed a motion for partial summary judgment, seeking a declaratory judgment that the Dolans did not have a prescriptive ditch easement across the Guenthers' property. In response, the Dolans moved under M. R. Civ. P. 56(f) for an order denying the Guenthers' motion for partial summary judgment or, in the alternative, continuing the deadline for their response until discovery was completed. The District Court denied the Dolans' Rule 56(f) motion as moot on November 5, 2019, reasoning that enough time had passed between their motion and the court's ruling to enable the Dolans to conduct the necessary discovery for a response, and ordered the Dolans to respond to the Guenthers' motion by later that month.

¶10 While the Guenthers' motion for partial summary judgment was pending, the Dolans cross-moved for partial summary judgment on March 2, 2020, asking for a declaratory judgment that the Dolans had an implied easement by existing use. The Guenthers moved to stay briefing on the Dolans' cross-motion until after the resolution of their motion. The Dolans objected, arguing that the Dolans' cross-motion should be considered concurrently with the Guenthers' motion for partial summary judgment. The

---

[4] The Ceartins and Dolans reached a settlement during the pendency of this appeal.

[5] In their answers to the amended complaint, all Defendants affirmatively alleged that the Cobb Hill Minor Subdivision Homeowners' Association (HOA) does not exist. The HOA did not file an answer to the Dolans' complaint and has not engaged in litigation throughout these proceedings.

court ordered a stay on briefing for the Dolans' cross-motion for partial summary judgment.

¶11 Nearly two years later, the District Court granted the Guenthers' motion for partial summary judgment. The District Court concluded that the Dolans did not have an easement of any kind across the Guenthers' property, expressly addressing the Dolans' implied easement theory. After another two years, following full briefing and oral argument, the District Court denied the Dolans' cross-motion for partial summary judgment. The court first applied the law-of-the case doctrine, stating that it already had considered the Dolans' argument for an implied easement by existing use. The court nonetheless continued to consider the merits of the Dolans' implied easement claim. The court reasoned that the COSA's express provision to abandon the feeder ditches negated the intent required for an implied easement. It added that all subsequent purchasers were "bound" by Cobb Hill, LLC's agreement to abandon the ditches and that examination of the circumstances was not required. The court concluded that the Guenthers wholly defeated the Dolans' claims as they were premised on the existence of the ditch easement. The court certified its judgment as immediately appealable under M. R. Civ. P. 54(b) and awarded the Dolans and Ceartins their attorney fees and costs pursuant to § 70-17-112(5), MCA. We accepted certification in accordance with M. R. App. P. 6(6) and now consider the Dolans' appeal.

## STANDARDS OF REVIEW

¶12 This Court reviews a district court's summary judgment ruling de novo. *Baugh v. H2S2, LLC*, 2024 MT 314, ¶ 12, 419 Mont. 472, 560 P.3d 1279 (citation omitted).

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). We review for an abuse of discretion a district court's determination on M. R. Civ. P. 56(f) motions, motions to stay, and the application of the law-of-the-case doctrine. *Hinderman v. Krivor*, 2010 MT 230, ¶ 12, 358 Mont. 111, 244 P.3d 306 (M. R. Civ. P. 56(f) motion); *Flying T Ranch LLC v. Catlin Ranch, LP*, 2020 MT 99, ¶ 7, 400 Mont. 1, 462 P.3d 218 (motion to stay); *State v. Keefe*, 2022 MT 121, ¶ 13, 409 Mont. 86, 512 P.3d 741 (law-of-the-case doctrine).

## DISCUSSION

*1. Did the District Court correctly determine that the Dolans do not hold an implied easement by existing use to a ditch that crosses the Cobb Hill Minor Subdivision property?*

**Implied Easement by Existing Use**

¶13 An easement is a nonpossessory interest in land, granting a person the right to use another's land "for a specific purpose or a servitude imposed as a burden upon the land." *Blazer v. Wall*, 2008 MT 145, ¶ 24, 343 Mont. 173, 183 P.3d 84 (citations omitted). An easement may be created by instrument, by law, or by prescription. *Yellowstone River, LLC v. Meriwether Land Fund I, LLC*, 2011 MT 263, ¶ 25, 362 Mont. 273, 264 P.3d 1065 (citations omitted). When "land is severed from common ownership[,]" an implied easement may arise by law. *Waters v. Blagg,* 2008 MT 451, ¶ 14, 348 Mont. 48, 202 P.3d 110 (citation omitted), *overruled on other grounds by Earl v. Pavex, Corp.*, 2013 MT 343, 372 Mont. 476, 313 P.3d 154; *JRN Holdings, LLC v. Dearborn Meadows Land Owners*

9

*Ass'n*, 2021 MT 204, ¶ 27, 405 Mont. 200, 493 P.3d 340 (citing *Hoyem Tr. v. Galt*, 1998 MT 300, ¶ 17, 292 Mont. 56, 968 P.2d 1131; *Wolf v. Owens*, 2007 MT 302, ¶¶ 16-17, 340 Mont. 74, 172 P.3d 124). Because a court's recognition of implied easements is an exception to and in derogation of the rule that "written instruments speak for themselves," implied easements are regarded with "extreme caution[,]" as courts are "reluctant . . . [to impose] a servitude through mere implication and without any compensation." *Yellowstone,* ¶¶ 33, 55 (internal quotations omitted; citations omitted).

¶14     An implied easement by existing use is created when a landowner uses one part of the property (quasi-servient tenement) for the benefit of another part (quasi-dominant tenement) prior to severance of common ownership, and the parties intended for the use to continue after the property's division. *Yellowstone*, ¶ 30; *Hoyem Tr.*, ¶ 22. The use prior to division of a tract is sometimes referred to as a quasi-easement because a landowner cannot hold an easement on their own land. *Hoyem Tr.*, ¶ 22. To establish an implied easement by existing use, a party must show by clear and convincing evidence, *Apecella v. Overman*, 2025 MT 219, ¶ 31, 424 Mont. 202, 577 P.3d 133, that

> (1) the dominant and servient tenements are severed from a common ownership ("unity of ownership"); (2) the use of the servient tenement is apparent, continuous, and reasonably necessary for the beneficial use and enjoyment of the dominant tenement at the time of severance; and (3) the parties to the deed that severed the tenements intended the use to continue after the division.

*JRN Holdings*, ¶ 28 (citing *Yellowstone*, ¶ 30; *Waters*, ¶ 14).

¶15     The District Court concluded that the Dolans did not meet their burden for establishing an implied easement by existing use. It reasoned that the COSA precluded the

10

inference that the parties intended the ditch's use to continue after the division of the property. The court added that the COSA legally bound Cobb Hill Minor Subdivision's landowners to Cobb Hill, LLC's intent to abandon the feeder ditches dispersed throughout the property. The Dolans argue that Ewing Trust's conduct created a quasi-easement after it acquired Lots 1, 2, 3, and 4 in 2006. They assert that the implied easement by existing use arose when Ewing Trust reestablished the ditch conveying water to Lots 2 and 3 and then represented to the Ceartins—who then sold to the Dolans—that they had a legal right to use the water flowing in that ditch.

¶16     The intent of the parties is "gathered from the evidence" surrounding the complete transaction. *White v. Landerdahl*, 191 Mont. 554, 558, 625 P.2d 1145, 1147 (1981) (citation omitted); Bruce et al., *The Law of Easements and Licenses in Land*, § 4:25 (2025-2) (hereinafter "Bruce et al."). The parties' intent may be shown by actual use when the common ownership is severed but also "such uses as the facts and circumstances show were within the reasonable contemplation of the parties at the time of conveyance." *Tungsten Holdings, Inc. v. Kimberlin*, 2000 MT 24, ¶¶ 25-33, 298 Mont. 176, 994 P.2d 1114, *cited in Waters*, ¶ 22; *accord Graham v. Mack*, 216 Mont. 165, 174, 699 P.2d 590, 596 (1984). "[L]anguage in the deed, content of related conveyances, verbal statements, lot and topography maps of the area, or testimony about the surrounding circumstances" may indicate the parties' intent to create an implied easement by existing use. Bruce et al., § 4:25. An implied easement cannot be established where evidence reveals that the alleged easement is "contrary to the parties' intention." *Yellowstone*, ¶ 55 (citations omitted); *see*

11

*also* Bruce et al., § 4:25 ("Implied easements cannot arise in the face of an expression of intent to the contrary."); *Koestel v. Buena Vista Pub. Serv. Corp.*, 676 P.2d 6, 9 (Ariz. Ct. App. 1984) ("Since the implication of an easement from preexisting use is made in the supposed execution of the parties' intent, the implication is never made where the evidence shows the absence of such intent.").

¶17 The parties argue that central to determining intent is the legality of deviating from the COSA's terms. The Dolans contend that because the COSA can be amended to incorporate the ditch, as illustrated by the Guenthers' installation of the culverts, it does not prevent the inference that Ewing Trust and the Ceartins intended to continue to use the ditch. The Guenthers counter that even with the availability of COSA amendments—made necessary here by the Dolans' refusal to abandon the ditch—the law prevents the inference of an easement because that would require the Court to presume that the parties had an illegal intent.

¶18 Unless the developer shows some exemption or exception to the subdivision sanitation regulations, the county clerk and recorder is prohibited from filing a plat that is still subject to sanitary restrictions. Section 76-4-122, MCA. Developers or owners of an approved subdivision also must provide purchasers of the subdivided property with a copy of the COSA or plat specifying the approved locations of the water supply, storm drain, and sewage disposal systems. Section 76-4-113, MCA. Each subsequent seller must include reference to the COSA's conditions. Section 76-4-113, MCA. Filing a COSA alongside the related plat in the county's central depository system "imparts constructive

notice of its contents to all interested parties" of the terms of that COSA. *Blazer*, ¶ 73 (citations omitted); *Hauseman v. Koski*, 259 Mont. 498, 502, 857 P.2d 715, 718 (1993) ("The recording statutes import notice to all interested parties in matters affecting title to real property." (citation omitted)).

¶19 Generally, a landowner may not use or construct a facility that deviates from the COSA unless it has been approved by the reviewing authority. Section 76-4-130, MCA. But deviations from COSAs are not illegal per se. *Williams v. Schwager*, 2002 MT 107, ¶¶ 24-26, 309 Mont. 455, 47 P.3d 839. A landowner may deviate from the COSA but may do so only when the reviewing authority approves that deviation. Section 76-4-130, MCA; Admin. R. M. 17.36.112(3) (2023). The reviewing authorities' approval typically occurs upon the landowners' formal application to amend the COSA under DEQ regulations. Section 76-4-104(7)(j), MCA; Admin. R. M. 17.36.112(3) (2023).

¶20 This Court, in *Williams v. Schwager*, recognized that a landowner may, upon approval by the governing entity, deviate from a certification of plat approval. *Williams*, ¶ 26. There, Williams and Schwager disputed an agreement governing a well shared between their properties. *Williams*, ¶ 1. The certification of plat approval required that each single-family dwelling drill an individual well. *Williams*, ¶ 5. Despite the plat approval's conditions, the two plats' predecessors shared a well. *Williams*, ¶¶ 6-8. Schwager argued that the shared-well agreement was void ab initio because it was in violation of the certification and contracted an illegal object. *Williams*, ¶¶ 24-27. This Court held that because the predecessor followed the certification of plat approval's

13

provisions requiring that he receive the reviewing authorities' approval prior to construction, and when doing so he received approval for the shared well, the well was not illegal per se and the agreement not void ab initio. *Williams*, ¶¶ 27-29.

¶21 The Dolans rely on *Williams* to argue that a formal application to amend the COSA is not necessary to establish a legal deviation from the COSA. But *Williams* is readily distinguishable. There, the reviewing authority approved the shared well, and evidence showed that shared wells were an encouraged and customary arrangement. *Williams*, ¶¶ 17-18. Here, once made aware of its continued existence, the reviewing authority has been adamant that the ditch violates the COSA and related subdivision sanitation regulations. On several occasions, the DEQ has communicated that the ditch cannot remain in place without the installation of culverts or other mitigating measures. The Guenthers' installation of culverts to accommodate the existence of the ditch with approval of both the Health Department and DEQ demonstrates only that deviation from the COSA is not illegal per se. But any intent the parties had at the time of conveyance that the alleged right to the ditch would continue after severance of common ownership must be based on facts and circumstances indicating continuance was within Ewing Trust's and the Ceartins' reasonable contemplations and expectations. *Tungsten Holdings,* ¶¶ 25-33; *Hoyem Tr.*, ¶ 31; *Waters*, ¶ 22; *Graham*, 216 Mont. at 174, 699 P.3d at 596. Such intent cannot be formulated at some period subsequent to the severance of common ownership. Bruce, et al., § 4:25. The Dolans' reference to actual and potentially available amendments to the

14

COSA does little to illustrate the parties' reasonable expectations at the time of conveyance.

¶22 The record is not clear that all parties reviewed the COSA at the time they purchased their properties; it is clear, however, that the Gallatin County Clerk and Recorder filed the COSA alongside the plat, and each deed referenced the plat on file. When the DEQ approved the Cobb Hill Minor Subdivision, it requested that Gallatin County Clerk and Recorder attach the COSA to Cobb Hill's final plat. The final plat and the COSA were simultaneously recorded. The COSA is unambiguous that the Health Department and DEQ approved the plat upon the mutual understanding of the conditions that "the small 'feeder' irrigation ditches across the lots [would] be abandoned" and that water supply, sewage, and storm drainage systems and sanitary facilities would conform to the approved plans and setback requirements. The deeds between (1) Cobb Hill, LLC and Ewing Trust, (2) Ewing Trust and the Ceartins, and (3) the Ceartins and the Dolans conveying Lot 2 did so "according to the official plat [of Lot 2] on file and of record in the office of the County Clerk and Recorder, Gallatin County, Montana." Cobb Hill Minor Subdivision's past and present landowners were given constructive notice of the COSA's conditions placed on their properties.

¶23 The Dolans correctly point out that, as a COSA may be amended, it does not irrevocably bind them, Ewing Trust, or the Ceartins to Cobb Hill, LLC's intent to abandon the feeder ditches. But Ewing Trust had, at the very least, constructive notice of the COSA conditions. Any intent to deviate from those conditions must have been within the parties'

15

reasonable expectations. *Hoyem Tr.*, ¶ 31. The Ewing Trust did not install culverts, nor did it seek the reviewing authority's approval of the ditch prior to severance of common ownership. Neither the Health Department nor the DEQ approved the use of the ditch, and both continue to disapprove of the ditch as it existed when common ownership was severed. Letters from the DEQ consistently and repeatedly communicate that with the ditch in place and without mitigation, Lots 1, 2, 3, 4, and 5 do not comply with the COSA or with subdivision sanitation regulations. The facts and circumstances do not show that continued use of the ditch was reasonably contemplated or expected at the time of conveyance to the Ceartins. Instead, the COSA, Ewing Trust's failure to seek amendment of the COSA or to install mitigating measures to accommodate the ditch, and the reviewing authorities' continued insistence that the ditch be abandoned as it existed prior to severance of common ownership is evidence contrary to the parties' intent that the Dolans allege. The subdivision was approved on the understanding that the feeder ditches would be abandoned.

¶24 Finally, the Dolans did not show that the ditch is reasonably necessary for use and enjoyment of the property. *JRN Holdings*, ¶ 28. As implied easements are "not favored" but "considered with 'extreme caution,'" *Yellowstone*, ¶ 33, we have not allowed such an easement on the basis of convenience, short of proven necessity. The District Court correctly determined that the Dolans did not meet their burden of proving their implied easement theory.

16

**Procedural Claims**

¶25 The Dolans raise several procedural claims on appeal. They argue that the District Court abused its discretion in denying their M. R. Civ. P. 56(f) motion and motion to stay, in deeming the Dolans' argument for an implied easement waived, and in applying the law-of-the-case doctrine to the Dolans' motion for partial summary judgment. An abuse of discretion occurs when a court "acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice." *Stephenson v. Lone Peak Preserve, LLC*, 2025 MT 148, ¶ 12, 423 Mont. 46, 571 P.3d 1042 (citation omitted). We will not reverse for an error that "would have no significant impact upon the result; if there is no showing of substantial injustice, the error is harmless." *In re A.N.*, 2000 MT 35, ¶ 39, 298 Mont. 237, 995 P.2d 427 (citation omitted).

¶26 The Dolans' contentions rest on the District Court's alleged failure to fully consider their argument that Ewing Trust created an implied easement by existing use. They suggest that because they were unable to complete discovery, they could not fully respond to the Guenthers' argument that the Dolans did not hold an easement on their property. The Dolans add that the District Court abused its discretion when it granted the Guenthers' motion to stay briefing on Dolans' motion for partial summary judgment and failed to consider the parties' motions for partial summary judgment concurrently. The Dolans assert that the final affront and abuse of discretion occurred when the District Court applied waiver and the law-of-the-case doctrine to their motion for partial summary judgment.

17

¶27 The Guenthers moved for partial summary judgment in July 2019, nearly fourteen months after the Dolans filed their complaint in June 2018. The Dolans filed a Rule 56(f) motion on August 29, 2019, requesting more time to conduct discovery, specifically to depose Jake Ceartin and Jody Ewing. The court issued its ruling on November 5, 2019, finding that the Dolans had sufficient time to conduct those depositions and concluding that the issue was moot. The court gave the Dolans until November 22, 2019, to file their response to the Guenthers' motion for partial summary judgment.

¶28 The Dolans take issue on appeal with the fact that discovery was still ongoing when the District Court ruled against their Rule 56(f) motion. The Dolans had nearly a year and a half to conduct discovery, including the deposition of two obviously key players in this litigation—the former landowner of Lot 2 and the common owner of Lots 1, 2, 3, and 4. *See Rosenthal v. Cnty. of Madison*, 2007 MT 277, ¶¶ 37-43, 339 Mont. 419, 170 P.3d 493 (holding that litigant had sufficient time to conduct discovery during the eight months between filing their initial claim and the opposition's summary judgment motion). The Dolans do not identify on appeal any facts they ostensibly could have discovered that would have altered the outcome of the Guenthers' partial summary judgment motion. *See Miller v. Goetz*, 2014 MT 150, ¶¶ 15-18, 375 Mont. 281, 327 P.3d 483; *Rosenthal*, ¶¶ 37-43. They have not shown cause for reversal by the court's denial of their Rule 56(f) motion.

¶29 The Dolans next claim that the District Court should have addressed the Geunthers' motion and their cross-motion for partial summary judgment concurrently. The cases the

Dolans cite in support of this argument are unavailing. In those cases, this Court explained that a district court must consider a party's motion for summary judgment on the merits even when there are simultaneous cross-motions for summary judgment. *Ike v. Jefferson Nat. Life. Ins. Co.*, 267 Mont. 396, 399-400, 884 P.2d 471, 474 (1994); *Hajenga v. Schwein*, 2007 MT 80, ¶¶ 18-19, 336 Mont. 507, 155 P.3d 1241; *Kilby Butte Colony, Inc. v. State Farm Mutual Auto. Ins. Co.*, 2017 MT 246, ¶ 7, 389 Mont. 48, 403 P.3d 664. For example:

> [W]hen faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other . . . . Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

*Hajenga*, ¶¶ 18-19 (internal quotations omitted). This authority does not suggest that the District Court was required to consider the motions for partial summary judgment simultaneously. The court ultimately evaluated each motion on its merits, and the Dolans have had the opportunity to appeal its rulings, which we have considered here.

¶30 The Dolans finally suggest that, because the District Court mentioned waiver and the law-of-the-case doctrine, it abused its discretion in denying their motion for partial summary judgment. The Dolans correctly observe that the District Court cited the incorrect legal standard for waiver. *See Roe v. City of Missoula, ex rel. Missoula City Council*, 2009 MT 417, ¶ 45, 354 Mont. 1, 221 P.3d 1200 (holding that litigant's lack of discussion on legal arguments waived those arguments on appeal); *Mountain W. Farm Bureau Mut. Ins. Co. v. Brewer*, 2003 MT 98, ¶ 9, 315 Mont. 231, 69 P.3d 652 (holding that litigant waived issued raised for the first time on appeal). But the Dolans fail to acknowledge the court's

19

agreement that the Dolans did not waive their argument for an implied easement by existing use. The Dolans similarly are correct that the District Court should not have raised the law-of-the-case doctrine on their motion for partial summary judgment. Again, though, the Dolans fail to acknowledge the ten ensuing pages where the court provided reasoned consideration of the merits of their argument for an implied easement by existing use.

¶31 Though the District Court erroneously invoked waiver and law-of-the-case doctrine in its order denying the Dolans' motion for partial summary judgment, it did not earnestly apply these legal standards, and its subsequent conclusions on the creation of an implied easement by existing use were correct. *State v. Marcial*, 2013 MT 242, ¶ 10, 371 Mont. 348, 308 P.3d 69 ("We will affirm the district court when it reaches the right result, even if it reaches the right result for the wrong reason." (citation omitted)). Its error was harmless. *In re A.N.*, ¶ 39. The District Court fully considered the merits of the parties' arguments on the Dolans' motion for partial summary judgment. The court's decisions employed conscientious judgment and reason when it reached its conclusion that the Dolans had not met their burden to establish an implied easement. Even though we do not accept all of its reasoning, the District Court did not abuse its discretion.

¶32 *2. Is the prevailing party entitled to attorney fees and costs, including those incurred on appeal?*

¶33 After the District Court ruled on the parties' partial summary judgment motions, they stipulated to a Rule 54(b) certification and to an award of fees and costs to the Guenthers for $145,000 and to the Ceartins for $85,000 pursuant to § 70-17-112(5), MCA. Both parties concede that the amounts of attorney fees and costs in that stipulated judgment

were reasonable. The Dolans contend, however, that because the District Court erred in its summary judgment decision, the Guenthers are not the prevailing party and are not entitled to attorney fees and costs either for the District Court proceedings or for those accrued on appeal.

¶34 When a party brings legal action based on interference with a ditch easement, the prevailing party is entitled to reasonable attorney fees and costs. Section 70-17-112(5), MCA. We have held that under § 70-17-112(5), MCA, the "costs and reasonable attorney's fees include those fees incurred [on] appeal." *Espy v. Quinlan*, 2000 MT 193, ¶ 28, 300 Mont. 441, 4 P.3d 1212. As we uphold the District Court's decision, we affirm its award of fees. In addition to the award determined by the court's stipulated order, the Guenthers are entitled to reasonable fees and costs incurred on appeal. We remand for the determination of that amount.

## CONCLUSION

¶35 We affirm the District Court's determination that the Dolans do not hold an implied easement by existing use on the Guenthers' property. We remand for the determination of reasonable attorney fees and costs on appeal and for other proceedings as may be appropriate.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE

21